**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| **TRICHA WADSWORTH,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.:1:23-cv-00622** |
| **UNIVERSAL PROTECTION SERVICES, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES,** | **JURY TRIAL DEMANDED** |
| **and** | |
| **G4S SECURE SOLUTIONS (USA) INC.,** | |
| *Defendants.* | |

## COMPLAINT

Plaintiff Tricha Wadsworth ("Ms. Wadsworth" or "Plaintiff") brings this action against Defendant Universal Protection Services, LLC d/b/a Allied Universal Security Services ("Allied") and G4S Secure Solutions (USA) Inc. ("G4S") (collectively "Defendants") to redress violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C § 2000e *et seq.*, as amended, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the laws of the Commonwealth of Virginia.

## JURISDICTION AND VENUE

1. Federal question subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. § 1988, and 42 U.S.C. § 2000e-5.

2. Supplemental jurisdiction is proper pursuant to 28 U.S.C. § 1367.

3. The Court has personal jurisdiction over Defendants because they conduct business throughout the Commonwealth of Virginia.

4.      Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1391. The acts and omissions alleged herein occurred within this judicial district.

## PARTIES

5.      Ms. Wadsworth is a thirty-nine (39) year old woman and Virginia resident. Ms. Wadsworth was employed as a Security Guard by G4S and Allied. Ms. Wadsworth performed work for Defendants in Front Royal, Virginia.

6.      Defendant Universal Protection Services, LLC is a Virginia limited liability company doing business as Allied Universal Security Services. Allied conducts business in Virginia with offices located in Arlington, Bedford, Chesapeake, Dulles, Harrisonburg, Reston, and Richmond, Virginia. Allied  provides security services to businesses, including onsite security guards and risk assessment tools.

7.      Defendant G4S Secure Solutions (USA) Inc. is a corporation conducting business in Virginia. G4S provides security services to businesses, including onsite security guards and risk assessment tools.

8.      In October 2021, a corporate merger was completed between Allied and G4S which transferred some Virginia G4S client accounts and employees to Allied. Ms. Wadsworth was hired in May 2021 by G4S Global.  As part of the merger, Ms. Wadsworth and other G4S employees became Allied employees, effective in October 2021.

## ADMINISTRATIVE REMEDIES

9.      Within 300 days of the illegal conduct of which she complains, Ms. Wadsworth filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on May 2, 2022, against Allied. *See* **Exhibit A**.

10.     On April 4, 2023, Ms. Wadsworth amended her Charge of Discrimination to include G4S. *See* **Exhibit B.**

11.     After more than 180 days after she filed her original Charge, the EEOC issued Ms. Wadsworth a Notice of Right to Sue on April 21, 2023, *See* **Exhibit C.**

12.     Ms. Wadsworth has satisfied all administrative prerequisites to bringing this action.

## STATEMENT OF FACTS

13.     G4S hired Ms. Wadsworth as a Security Guard in May 2021.

14.     G4S assigned Ms. Wadsworth to the 3:00 p.m. to 11:00 p.m. shift at Axalta Coating Systems in Front Royal, Virginia.

15.     Axalta Coating Systems develops and manufactures liquid and powder coatings for auto dealerships, body shops, and industrial uses.

16.     As a Security Guard at Axalta, Ms. Wadsworth was posted at the front gate where she logged and inspected incoming and outgoing vehicles, granted access to employees with badges, checked credentials of persons seeking entry, answered phones, and completed Site Observation Reports. Ms. Wadsworth also stopped numerous employee thefts during her shifts.

### Sergeant Free and Lieutenant Roseboro Daily Sexually Harassed Ms. Wadsworth

17.     G4S assigns para-military titles to employees based on rank. Ms. Wadsworth was a "Security Guard" and directly supervised by Sergeant Preston Free ("Sgt. Free"). Ms. Wadsworth's second-line supervisor was Lieutenant Will Roseboro ("Lt. Roseboro").

18.     Sgt. Free participated in Ms. Wadsworth's interview and told Ms. Wadsworth she was only hired because of her looks. Sgt. Free told Ms. Wadsworth that he requested Lt. Roseboro hire a female employee and that Ms. Wadsworth was hired as a result of Sgt. Free's request. Sgt. Free asked Lt. Roseboro to fast track Ms. Wadsworth's hiring.

19.     Immediately after Ms. Wadsworth began her employment, Lt. Roseboro and Sgt. Free sexually propositioned her, made sexual comments and jokes, and asked about Ms. Wadsworth's sex life.

20.     Between May 2021 and October 2021, Sgt. Free made daily comments to Ms. Wadsworth about her appearance, including:

   a.   "Do you have a boyfriend or a girlfriend?"

   b.   "Those jeans are hugging you in all the right places."

   c.   "Your ass looks tight in those jeans."

   d.   "I bet you're a top kinda girl, you like to ride and take control."

   e.   "Have you ever been with another woman?"

   f.   "Would you consider a threesome?" (Sgt. Free offered to pay Ms. Wadsworth between $100-$600 to partake in a threesome)

   g.   "Do you like using whip cream and chocolate?"

   h.   "Do you like using toys?"

   i.   "Do you like to be tied up?

   j.   "Have you ever been with a black man?"

   k.   "What's the biggest pipe you've ever taken?"

21.     Ms. Wadsworth's assigned working location was a small, enclosed, external guard station. The room was approximately 16 feet x 16 feet and was not accessible from inside the interior Axalta plant.

22.     G4S assigned Ms. Wadsworth to work every shift alongside Sgt. Free. Ms. Wadsworth was isolated in the guard station alone with Sgt. Free and without access to other G4S employees for most of her shifts.

23.     Lt. Roseboro worked the shift prior to Ms. Wadsworth and Sgt. Free and saw Ms. Wadsworth daily at shift change.

24.     Ms. Wadsworth was the only heterosexual female employee assigned to the Axalta post. The only other female guard was homosexual and worked the night shift away from Sgt. Free and Lt. Roseboro.

25.     Between May 2021 and October 2021, Lt. Roseboro made daily sexual comments to Ms. Wadsworth when he saw her at the start of his shift, including, but not limited to:

    a.  "I'm a Black man and you know what that means; you've never seen one as big and wide as mine. Women pay me to try it out but most can't go through with the task."

    b.  "It's time for you try out my dark chocolate." (Lt. Roseboro is Black; Ms. Wadsworth is White.)

    c.  "You're thick and that's how I like my women."

    d.  "You have extra in all the right places to grab onto."

    e.  "Your breast size is perfect."

    f.  "Have you ever got a man off with your breasts?"

    g.  "I will tear that ass up."

    h.  Calling Ms. Wadsworth his "future wife."

    i.  Commenting, "looking good, future wife" and

    j.  Commenting on "motorboating" Ms. Wadsworth's breasts.

26.     Lt. Roseboro told Ms. Wadsworth sex with him would "only hurt for a moment" referencing his penis size. Sgt. Free responded, "you wouldn't feel a thing" referencing Sgt. Free's own penis size.

27.     In June 2021, Lt. Roseboro brought in some nuts from Africa which he called "Cola Nuts" and stored them in the refrigerator. Lt. Roseboro told everyone they were used to "arouse

men and make them horny." Lt. Roseboro told Ms. Wadsworth that the nuts were for her and asked her if she wanted to take some home and "take them for a spin."

28.     Lt. Roseboro also told Ms. Wadsworth in front of Sgt. Free that he and his wife were "swingers" and went into graphic detail about their escapades, including how they had sex with unknown women in hotel rooms. Lt. Roseboro called this a "polyamory meet up" or "swingers hotel event."  Lt. Roseboro described how he was getting paid by White women to complete their interracial fantasies and that his wife did not mind and was looking forward to a "threesome."

<u>**Sergeant Free and Lieutenant Roseboro**</u>
<u>**Criticized Ms. Wadsworth's Breast Reduction**</u>

29.     On July 26, 2021, Ms. Wadsworth requested Lt. Roseboro's approval on her leave request so she could obtain a medically necessary breast reduction to relieve back pain.

30.     Lt. Roseboro lamented for week with comments such as:

    a.   "Why on earth would you get such a procedure?"

    b.   "You will make a lot of men unhappy." and

    c.   "I don't want my future wife to get that done."

31.     Lt. Roseboro told Ms. Wadsworth that he had watched a video of the procedure at home and then began commenting on the procedure itself.

32.     Lt. Roseboro informed Sgt. Free about Ms. Wadsworth's upcoming procedure and Sgt. Free also began commenting daily on Ms. Wadsworth's procedure and her breast size. He told her that he loved her breast size and that a lot of women would be jealous of Ms. Wadsworth's breasts.

33.     Both Lt. Roseboro and Sgt. Free told Ms. Wadsworth on multiple occasions that they were both "ass and tits guys."

34.     In June 2021, the sexual innuendos became more aggressive from Sgt. Free. Sgt. Free asked Ms. Wadsworth how many times per week she liked to have sex and whether she liked White or Black men.

### Ms. Wadsworth Sought Help from Delivery Drivers

35.     Since she was physically isolated from most G4S employees, in approximately June 2021, Ms. Wadsworth began to seek help from delivery drivers to combat the sexual harassment she was being subjected to by Lt. Roseboro and Sgt. Free.

36.     Ms. Wadsworth asked them to observe and speak out against the harassment, which they did.

37.     Sgt. Free and Lt. Roseboro saw Ms. Wadsworth speaking to the drivers and leveraged the opportunity to further harass her. Sgt. Free threatened Ms. Wadsworth, telling her she was prohibited from speaking to drivers about what happened in the guard house and that doing so was grounds for dismissal.

38.     Sgt. Free offered Ms. Wadsworth's phone number to drivers so they could "meet her after work and she could make some more money."

39.     In response,  Sgt. Free received multiple phone numbers from various drivers, wrote them down, and handed them to Ms. Wadsworth, as well as handing out Ms. Wadsworth's personal email address to the drivers.

40.     Sgt. Free suggested Ms. Wadsworth get in the cab of the truck with delivery driver Mr. Buton. Sgt. Free claimed "he would not say anything to anyone" and suggested Ms. Wadsworth "take one for the team."

41.     Beginning in approximately August 2021, Lt. Roseboro began to stay on post past his shift so he could harass Ms. Wadsworth. Like Sgt. Free, Lt. Roseboro's comments became

more and more sexually explicit. Lt. Roseboro told Ms. Wadsworth about the type of porn he liked to watch and tried to engage Ms. Wadsworth to discuss her preferences. Lt. Roseboro and Sgt. Free told Ms. Wadsworth that they watched porn on their phones at work and asked why she did not do the same.

### Delivery Drivers Observed Lieutenant Roseboro Fondling Himself While Staring at Ms. Wadsworth

42.     During August and September 2021 several delivery drivers observed Lt. Roseboro rubbing his crotch under his desk while looking at Ms. Wadsworth.

43.     In September 2021, delivery drivers heard Lt. Roseboro telling Ms. Wadsworth "why don't you come into the bathroom and I can put whip cream on my cock and you can lick it off." Lt. Roseboro then said, "you know you like this."

### Sergeant Free and Lieutenant Roseboro Threatened Ms. Wadsworth with Termination

44.     Ms. Wadsworth repeatedly asked Lt. Roseboro to stop speaking to her in inappropriate and abusive ways and told Lt. Roseboro she was going to complain to Human Resources.

45.     Ms. Wadsworth asked Lt. Roseboro and Sgt. Free to stop speaking to her in a sexual manner every day. Ms. Wadsworth protested daily and scorned Lt. Roseboro and Sgt. Free's harassment.

46.     Lt. Roseboro told Ms. Wadsworth at least three (3) times in response to her protests, "there have been plenty of girls before you and they are no longer employed." Lt. Roseboro threatened Ms. Wadsworth, "We have our ways and I promise you it will backfire on you, and you will lose your job, do you want that?"

**Lieutenant Roseboro Sexually Rubbed Ms. Wadsworth's Lower Back
and Threatened Her with Termination if she Complained**

47.     October 6, 2021 was Ms. Wadsworth's birthday. When she arrived for her shift Lt. Roseboro had left her a card, candy, flowers, and cupcakes. Ms. Wadsworth asked why he brought so many gifts when such gift-giving was not the norm among G4S employees. Lt. Roseboro responded, "I need to take care of my future wife."

48.     On October 7, 2021, when Ms. Wadsworth arrived at work for her last shift prior to her surgery, both Sgt. Free and Lt. Roseboro began harassing her almost immediately and lamenting that this was the last time they would "be blessed" with her "bigger breasts."

49.     During her shift, Lt. Roseboro approached Ms. Wadsworth and placed his hand on her shoulder. He attempted again to talk her out of her surgery and commented on her body and "what a shame" it would be to get the surgery done.

50.     Ms. Wadsworth tried to step away and voiced her discomfort; however, Lt. Roseboro slid his hand down Ms. Wadsworth's shoulder and to the small of her back.

51.     Ms. Wadsworth became extremely scared and began shaking uncontrollably.

52.     Ms. Wadsworth told Lt. Roseboro that she had repeatedly told him that these types of conversations made her feel extremely uncomfortable and that she was just there to do her job and he was making it impossible for her to do that.

53.     Ms. Wadsworth told Lt. Roseboro and Sgt. Free she was going outside to call HR. Both Lt. Roseboro and Sgt. Free yelled at Ms. Wadsworth and threatened that if she called HR, she would be terminated. Lt. Roseboro said, "If you call HR, I will say you tampered with the truck logs."

54.     Lt. Roseboro and Sgt. Free's actions made Ms. Wadsworth so uncomfortable and terrified that she spilled her coffee all over the desk and hurriedly tried to clean it up, all while she was trembling and shaking because she felt she needed to get to safety.

55.     Sgt. Free yelled at Ms. Wadsworth as she attempted to clean up the coffee, yelling: "Tricha, you don't want to do this, we've talked about this, there have been other girls in your shoes and look around – they are not here, if you do this, we will find a way and you will be terminated!" Ms. Wadsworth replied, "I haven't done anything, I have to deal with this every day and I still do my job better than anyone here. What are you going to do, blackmail me?" Sgt. Free then replied: "Try us."

### Ms. Wadsworth Complained about Sexual Harassment

56.     On October 7, 2021, at approximately 3:15 p.m., Ms. Wadsworth called Amir Day, Client Manager and regional site supervisor for G4S. He did not answer the call, so Ms. Wadsworth left a voicemail.

57.     Ms. Wadsworth then called Taylor Sanders, the Human Resource Generalist for G4S, three (3) times. Ms. Sanders did not answer the calls.

58.     Lt. Roseboro came out of the guard stand and began yelling at Ms. Wadsworth again.

59.     Ms. Wadsworth went to her car to escape Lt. Roseboro's screaming and emailed Ms. Sanders at 3:36 p.m., "can you call me ASAP?"

60.     Ms. Wadsworth drove home and at 4:49 p.m., Ms. Sanders responded to Ms. Wadsworth via email, "How may I assist you?" At 5:00 p.m., Ms. Wadsworth emailed her response, "I just had a severe issue at my post the lt and sgt cornered me and was yelling at me

and touching me I had to leave the post. I tried to call the site supervisor and left a message. I don't know who I need to talk to."

61.    Ms. Sanders then called Ms. Wadsworth and told her not to worry about leaving her post, that Ms. Sanders understood, to have her surgery, and that when she was feeling better, to email her statement to David Holden, Director of Operations for Allied, so an investigation into Ms. Wadsworth's allegations of sexual harassment could begin.

### Defendants Refused to Return Ms. Wadsworth to Work after her FMLA Leave and Surgery

62.    Ms. Wadsworth took Family Medical Leave pursuant to the FMLA beginning October 8, 2021.

63.    Ms. Wadsworth underwent surgery on October 11th. Defendants never provided Ms. Wadsworth with a copy of her FMLA certification or approval paperwork.

64.    On October 22, 2021, Ms. Wadsworth emailed Mr. Holden and Mr. Day and reported the sexual harassment she had endured since she began working at G4S. Mr. Holden confirmed he was investigating Ms. Wadsworth's complaints.

65.    On October 22, 2021, Ms. Wadsworth also emailed Mr. Holden about scheduling her return to work and to confirm she would be re-assigned to her previous post at Axalta in light of the fact that Ms. Wadsworth had formed close bonds with Axalta employees and the delivery drivers.

66.    On October 28, 2021, Ms. Wadsworth sent a follow up email inquiring about her benefits. Ms. Sanders failed to complete Ms. Wadsworth's short-term disability paperwork which resulted in Ms. Wadsworth not being paid during the second week of her leave.

67.    On November 11, 2021, Ms. Wadsworth followed up with Mr. Holden about her return to work.

## Allied Terminated Ms. Wadsworth

68.    On November 12, 2021, Ms. Wadsworth was instructed to travel to Allied's Reston, Virginia location to meet with Mr. Day (G4S Client Manager/Site Supervisor for Axalta). Mr. Day met with Ms. Wadsworth for a two (2) minute meeting during which he told Ms. Wadsworth she was being removed from her post because of the "client's request." Ms. Wadsworth asked if she was being removed because she had filed a sexual harassment complaint to which Mr. Day said, "it's neither here nor there." Ms. Wadsworth pressed on and asked who exactly had asked that she be removed. Mr. Day said that Lt. Roseboro recommended her termination. Approximately 120 seconds after Ms. Wadsworth sat down in Mr. Day's office, he asked her to leave because he had another meeting. Mr. Day refused to answer any of Ms. Wadsworth's further questions.

69.    Defendants told Ms. Wadsworth she could apply online for other positions, but her credentials were deactivated while she was on leave.

70.    On November 15, 2021, Defendants terminated Ms. Wadsworth. Ms. Wadsworth was terminated three (3) weeks after reporting sexual harassment.

## COUNT I
## 42 U.S.C. § 2000(e) TITLE VII
## SEX DISCRIMINATION AGAINST BOTH DEFENDANTS– TERMINATION

71.    Ms. Wadsworth incorporates by reference paragraphs 13 to 70 above.

72.    Title VII makes it unlawful to discriminate against any individual based on sex with respect to compensation, terms, conditions, or privileges of employment.

73.    Defendants are "employers" within the meaning of Title VII. Ms. Wadsworth was an "employee" within the meaning of Title VII.

74.    Ms. Wadsworth is female and a member of a protected class.

75.     Defendants treated Ms. Wadsworth adversely with regard to the terms and conditions of her employment because of her sex and terminated her.

76.     Ms. Wadsworth's sex was a motivating factor in Defendants subjecting her to threats, physical touching to which she did not consent, insults, sexual propositions, and sexist jokes.

77.     Almost daily, Sgt. Free and Lt. Roseboro subjected Ms. Wadsworth to lewd and horrific sexual commentary, questions, stories, jokes, propositions, and threats.

78.     Sgt. Free and Lt. Roseboro threatened Ms. Wadsworth and told her that previous women who complained were terminated and advised her not to complain to Human Resources or she would be terminated.

79.     Defendants terminated Ms. Wadsworth because of her sex.

80.     Sgt. Free and Lt. Roseboro did not subject male employees to unwanted sexual jokes, commentary, threats, and physical touching.

81.     As an actual and proximate cause of Defendants' conduct, Ms. Wadsworth has suffered physical injury, emotional distress, embarrassment, humiliation, and lost wages and benefits.

82.     Due to Defendants' intentional disregard of Ms. Wadsworth's federally protected rights under Title VII, Ms. Wadsworth seeks punitive damages, in addition to  nominal and compensatory damages to compensate her for harm inflicted by Defendants. Ms. Wadsworth seeks backpay with pre and post judgment interest, front pay, reimbursement for lost benefits, compensation for emotional distress, and repayment of her attorneys' fees and litigation costs and expenses.

**COUNT II**
**42 U.S.C. § 2000(e) TITLE VII**
**HOSTILE WORK ENVIRONMENT AGAINST BOTH DEFENDANTS**

83.     Ms. Wadsworth incorporates by reference paragraphs 13 to 70 above.

84.     Title VII  makes it unlawful to discriminate against any individual based on sex with respect to compensation, terms, conditions, or privileges of employment.

85.     Defendants are "employers" within the meaning of Title VII. Ms. Wadsworth was an "employee" within the meaning of Title VII.

86.     Ms. Wadsworth is female and a member of a protected class.

87.     Almost daily, Sgt. Free and Lt. Roseboro subjected Ms. Wadsworth to lewd and horrific sexual commentary, questions, stories, jokes, propositions, and threats.

88.     Sgt. Free and Lt. Roseboro threatened Ms. Wadsworth and told her that previous women who complained were terminated and advised her not to complain to Human Resources or she would be terminated.

89.     Other Allied/G4S female employees whom Lt. Roseboro and Sgt. Free sexually harassed prior to Ms. Wadsworth could not endure their sexual harassment.

90.      Defendants subjected Ms. Wadsworth to a hostile work environment that was so severe or pervasive that no reasonable employee could have been expected to endure it.

91.     Sgt. Free's and Lt. Roseboro's harassment was so severe or pervasive that it altered the terms and conditions of Ms. Wadsworth employment and created a discriminatory and abusive working environment.

92.     Ms. Wadsworth complained about the extreme, threatening, and physical sexual harassment to which she was subjected, but Defendants ignored Ms. Wadsworth's complaints and

did not bother to investigate. Instead, Defendants terminated Ms. Wadsworth on November 15, 2021.

93.     Defendants subjected Ms. Wadsworth to a hostile work environment based on her sex.

94.     As an actual and proximate cause of Defendants' conduct, Ms. Wadsworth has suffered physical injury, emotional distress, embarrassment, humiliation, and lost wages and benefits.

95.     Due to Defendants' intentional disregard of Ms. Wadsworth's federally protected rights under Title VII, Ms. Wadsworth seeks punitive damages, in addition to nominal and compensatory damages to compensate her for harm inflicted by Defendants.  Ms. Wadsworth seeks backpay with pre and post judgment interest, front pay, reimbursement for lost benefits, compensation for emotional distress, and repayment of her attorneys' fees and litigation costs and expenses.

### COUNT III
### 42 U.S.C. § 2000(e)-3 TITLE VII RETALIATION
### AGAINST BOTH DEFENDANTS

96.     Ms. Wadsworth incorporates by reference paragraphs 13 to 70 above.

97.     Title VII states that it is unlawful "for an employer to discriminate against any of his employees…, because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S. Code § 2000e–3.

98.     On October 7, 2021, Ms. Wadsworth reported Sgt. Free and Lt. Roseboro's harassment and discrimination to Taylor Sanders,  G4S's Human Resource Generalist. On October 22, 2021, Ms. Wadsworth emailed her written complaint of sexual harassment to Mr. Holden, Allied's Director of Operations, and Mr. Day, the G4S Client Manager/Site Supervisor for Axalta.

99.     Mr. Holden claimed he would investigate Ms. Wadsworth's complaints, but refused to continue discussing her return to work, never investigated, and Defendants terminated Ms. Wadsworth on November 15, 2021.

100.    Ms. Wadsworth engaged in protected activity when she complained of sexual harassment to Mr. Holden, Mr. Day, and Ms. Sanders.

101.    Defendants terminated Ms. Wadsworth approximately three (3) weeks after she complained of sexual harassment.

102.    Because of her complaints, Defendants terminated Ms. Wadsworth.

103.    Ms. Wadsworth's protected activity and her termination were causally connected and not wholly unrelated.

104.    As an actual and proximate cause of Defendants' conduct, Ms. Wadsworth has suffered physical injury, emotional distress, embarrassment, humiliation, and lost wages and benefits.

105.    Due to Defendants' intentional disregard of Ms. Wadsworth's federally protected rights under Title VII, Ms. Wadsworth seeks punitive damages, in addition to nominal and compensatory damages to compensate her for harm inflicted by Defendants. Ms. Wadsworth seeks backpay with pre and post judgment interest, front pay, reimbursement for lost benefits, compensation for emotional distress, and repayment of her attorneys' fees and litigation costs and expenses.

### COUNT IV
### 29 C.F.R. § 2615(a)(2) FAMILY MEDICAL LEAVE ACT (FMLA) RETALIATION AGAINST BOTH DEFENDANTS

106.    Ms. Wadsworth incorporates by reference paragraphs 29 to 70 above.

107.    The Family Medical Leave Act prohibits employers from discriminating against employees who have used leave and prohibits employers from using FMLA leave as a factor in an adverse employment decision. Ms. Wadsworth engaged in protected activity by taking FMLA leave beginning October 8, 2021.

108.    Ms. Wadsworth's FMLA leave was used for a medically necessary breast reduction surgery, which her supervisors repeatedly mocked and harassed her about for weeks.

109.    Lt. Roseboro participated in the decision to terminate Ms. Wadsworth; Lt. Roseboro was aware of Ms. Wadsworth's leave and was responsible for approving her leave request and reviewing her doctors' records. Lt. Roseboro mocked Ms. Wadsworth for having the breast reduction surgery, threatened her, pleaded with her not to have it, then immediately recommended her termination when she returned from FMLA leave. Through these actions of Lt. Roseboro, Defendants acted willfully and in bad faith.

110.    Defendants retaliated against Ms. Wadsworth by terminating her employment on November 15, 2021, immediately after her return from FMLA leave.

111.    Ms. Wadsworth's FMLA leave, and termination were causally connected and not wholly unrelated.

112.    As an actual and proximate cause of Defendants' conduct, Ms. Wadsworth has suffered physical injury, emotional distress, embarrassment, humiliation, and lost wages and benefits.

113.    Ms. Wadsworth seeks nominal, compensatory, and liquidated damages to compensate her for harm inflicted by Defendants.  Ms. Wadsworth seeks backpay with pre and post judgment interest, front pay, reimbursement for lost benefits, compensation for emotional distress, and repayment of her attorneys' fees and litigation costs and expenses.

<u>**COUNT V**</u>
**29 C.F.R. § 2615(a)(1) FAMILY MEDICAL LEAVE ACT (FMLA) INTERFERENCE AGAINST BOTH DEFENDANTS**

114.    Ms. Wadsworth incorporates by reference paragraphs 29 to 70 above.

115.    The Family Medical Leave Act prohibits employers from interfering with an employee's FMLA leave or rights under the FMLA.

116.    Ms. Wadsworth took FMLA leave beginning October 8, 2021.

117.    Ms. Wadsworth's FMLA leave was used for a medically necessary breast reduction surgery, which her supervisors repeatedly mocked and harassed her for weeks.

118.    Lt. Roseboro participated in the decision to terminate Ms. Wadsworth; Lt. Roseboro was aware of Ms. Wadsworth's leave and was responsible for approving her leave request and reviewing her doctors' records.

119.    Defendants refused to provide Ms. Wadsworth with copies of her FMLA paperwork or properly process her benefits while she was on FMLA leave, including, but not limited to, failing to complete Ms. Wadsworth's short-term disability paperwork, which resulted in Ms. Wadsworth not being paid during the second week of her leave.

120.    Defendants interfered with Ms. Wadsworth's FMLA leave by failing to properly handle her leave and benefits paperwork, denying her pay for part of her leave.

121.    As an actual and proximate cause of Defendants' conduct, Ms. Wadsworth has suffered physical injury, emotional distress, embarrassment, humiliation, and lost wages and benefits.

122.    Ms. Wadsworth seeks nominal, compensatory, and liquidated damages to compensate her for harm inflicted by Defendants. Ms. Wadsworth seeks backpay with pre and post judgment interest, front pay, reimbursement for lost benefits, compensation for emotional distress, and repayment of her attorneys' fees and litigation costs and expenses.

<u>**COUNT VI**</u>
**CIVIL BATTERY UNDER VIRGINIA LAW**
**AGAINST BOTH DEFENDANTS**

123.    Ms. Wadsworth incorporates by reference paragraphs 47 to 55 above.

124.    In Virginia, the tort of battery is an unwanted touching which is neither consented to, excused, nor justified. *Koffman v. Garnett,* 574 S.E.2d 258, 261 (Va. 2003). Civil battery requires a showing of (1) "an unwanted touching which is neither consented to, excused, nor justified" (2) that is "offensive" and (3) that is "done in a rude, insolent, or angry manner." *Dao v. Faustin,* 402 F. Supp. 3d 308, 317 (E.D. Va. 2019).

125.    Lt. Roseboro subjected Ms. Wadsworth to a touching that was neither consented to, excused, nor justified.

126.    Ms. Wadsworth was horrified and extremely disturbed by Lt. Roseboro's touching.

127.    Lt. Roseboro's touching was offensive and done in an inappropriate, sexual manner.

128.    Ms. Wadsworth did not consent to Lt. Roseboro's touching and attempted to flee.

129.    A reasonable female employee would be offended by a male supervisor sliding his hand down her lower back.

130.    Lt. Roseboro committed a civil battery against Ms. Wadsworth when he touched her shoulder and slid his hand to her lower back despite her attempts to resist.

131.    Because other Allied/GS4 female employees had complained to Defendants about Lt. Roseboro sexually harassing them,  Defendants were on notice of Lt. Roseboro's propensity to sexually harass and touch women.

132.    Ms. Wadsworth also complained about Lt. Roseboro's conduct, but Defendants did nothing to investigate his unlawful touching or prevent it from occurring again; instead, Defendants terminated Ms. Wadsworth.

133.    Defendants ratified Lt. Roseboro's conduct by failing to do anything to discipline Lt. Roseboro or prevent such conduct in the future.

134.    Defendants are vicariously liable for Lt. Roseboro's conduct.

135.    As an actual and proximate cause of Defendants' and Lt. Roseboro's conduct, Ms. Wadsworth has suffered physical injury, emotional distress, embarrassment, humiliation, and lost wages and benefits.

136.    Ms. Wadsworth seeks nominal, compensatory, and punitive damages to compensate her for harm inflicted by Defendants. *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003) (permitting plaintiff to pursue punitive damages since the Court concluded he properly pled his civil battery claim).Ms. Wadsworth seeks backpay with pre and post judgment interest, front pay, reimbursement for lost benefits, compensation for emotional distress, and repayment of her attorneys' fees and litigation costs and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tricha Wadsworth respectfully requests that this Honorable Court enter judgment in her favor on all Counts of her Complaint and against Defendants and that she be awarded the following relief:

a.    Entry of judgment in favor of Plaintiff on all Counts;

b.    Award of back pay for Plaintiff against Defendants;

c.    Award of compensatory damages for Plaintiff against Defendants;

d.    Award of punitive or liquidated damages for Plaintiff against Defendants;

e.      Award of reasonable attorneys' fees and litigation costs and expenses for Plaintiff

against Defendants;

f.      Award of pre and post judgment interest for Plaintiff;

1.      Any other relief that this Court deems equitable, appropriate, and just.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Tricha Wadsworth

hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,


*/s/Valerie A. Teachout*
Valerie A. Teachout, Esq. (VSB 70887)
Ivey E. Best (Applicant *pro hac vice*)
THE SPIGGLE LAW FIRM, P.C.
3601 Eisenhower Ave, Suite 425
Alexandria, Virginia 22304
V. Teachout Direct Line (571) 513-6942
Telephone: (202) 449-8527
Facsimile: (202) 517-9179
E-Mail: vteachout@spigglelaw.com
            ibest@spigglelaw.com

*Counsel for Plaintiff*